UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No.:

BARBARA HENRY,                          )
                                        )
                 Plaintiff,             )
                                        )
        v.                              )
                                        )
MIGUEL LOPEZ, individually, and         )
the CITY OF PLANTATION, a               )
Florida Municipal corporation,          )
                                        )
                 Defendants.            )
_____   )

## COMPLAINT
## INTRODUCTORY STATEMENT

1.      This is a civil action seeking money damages in excess of $15,000 dollars,

exclusive of costs, interest, and attorney's fees, against MIGUEL LOPEZ, individually, and the

CITY OF PLANTATION, a Florida Municipal corporation.

2.      This action is brought pursuant to 42 U.S.C. § 1983 and § 1988, and the

Fourth and Fourteenth Amendments to the United States Constitution.  The United States District

Court for the Southern District of Florida has jurisdiction of this action under 42 U.S.C. § 1983, 28

U.S.C. § 1331 and 28 U.S.C. § 1343.   Plaintiff further invokes the supplemental jurisdiction of the

United States District Court to hear pendant State tort claims arising under State law, pursuant to 28

U.S.C. § 1367(a).

3.      Plaintiff has served notice of claim on Defendant CITY OF PLANTATION

pursuant to the requirements of §768.28 of the Florida Statutes.

## PARTIES

4.      Plaintiff BARBARA HENRY is a resident of Broward County, State of Florida.

5.      At all times referred to herein, Defendant MIGUEL LOPEZ [hereinafter LOPEZ or Defendant LOPEZ] was a law enforcement officer for Defendant CITY OF PLANTATION, a Florida Municipal corporation, and was acting under color of law, and in such capacity as an agent, servant, and employee of Defendant CITY OF PLANTATION.

6.      Defendant CITY OF PLANTATION [hereinafter Defendant CITY or Defendant CITY OF PLANTATION] is a Florida municipal corporation, organized and existing under the laws of the State of Florida, and located in Broward County, Florida.  In this cause, Defendant CITY OF PLANTATION acted through its agents, employees, and servants, including Defendant LOPEZ and others.

7.      Plaintiff sues Defendant LOPEZ in his individual capacity.

## FACTS COMMON TO ALL COUNTS

8.      On February 8, 2010, at approximately 22:00 hrs., a strong-armed robbery occurred outside the Walgreens store located at 6105 W. Sunrise Boulevard, Sunrise, Florida, on the north side of Sunrise Boulevard, Broward County, Florida.

9.      At all times material hereto, Sunrise Boulevard (State Road 838) was an east-west divided highway with several lanes of travel in each direction, separated by a raised median.

10.     The victim of the strong-armed robbery reported that two black males "snatched my purse" and ran north on Sunset Strip.

11.     At all times material hereto, in the area of Walgreens Sunset Strip was a north-

2

south roadway (i.e., perpendicular to Sunrise Boulevard) with two lanes of travel in each direction, separated by a raised median. From Sunrise Boulevard, Sunset Strip runs north for approximately 1 mile before turning west providing access to University Drive (State Road 817), a multi-lane north-south roadway, and Oakland Park Boulevard (State Road 816), a multi-lane east-west roadway (via Northwest 64th Avenue) which runs parallel to Sunrise Boulevard.

12.     At all times material hereto, Northwest 15th Street (located approximately ½ mile north of Sunrise Boulevard) was an east-west roadway which crosses Sunset Strip and provides access east to Northwest 56th Avenue, which in turn connects with Sunrise Boulevard to the south and with Oakland Park Boulevard and Commercial Boulevard (via Inverrary Boulevard and Northwest 70th Avenue) to the north.

13.     At approximately 20:03 hrs., Sgt. Mark A. Wendt (hereinafter "Wendt"), a K-9 officer for Defendant CITY OF PLANTATION, was traveling westbound on West Sunrise Boulevard, west of Walgreens.

14.     In the 6300 block of West Sunrise Boulevard, Wendt observed two black males running on foot.

15.     Wendt believed the conduct of the two black males was suspicious, whereupon Wendt stopped his marked Defendant CITY OF PLANTATION police unit and "ordered them to come over to me."

16.     The subjects ignored Wendt's verbal commands and ran north down an alley (located in the City of Sunrise, Florida) on the west wide of Sun Rental Equipment, 6301 W. Sunrise Boulevard, Sunrise, Florida. The Sun Rental Equipment is located west of both Walgreens (by approximately 750 feet) and Sunset Strip (by approximately 900 feet).

17.     Because the area where the subjects were observed running was located within the City of Sunrise, Wendt contacted the City of Sunrise Police Department and was advised that a strong-armed robbery has just been reported at the nearby Walgreens store.  The subjects wanted in connection with the strong-armed robbery matched the description of the subjects Wendt last observed running north near Sun Rental Equipment.

18.     In response to the strong-armed robbery, members of the City of Sunrise police department responded to the area of the Walgreens and began to set up a perimeter.

19.     Several Defendant CITY OF PLANTATION police officers, including Defendant LOPEZ, left their jurisdiction and entered the City of Sunrise to assist.

20.     Defendant CITY OF PLANTATION police officer Steven Miller (hereinafter "Miller") arrived at the incident location and took a perimeter position at the intersection of Northwest 11th Street and Sunset Strip, located approximately 200 yards north of Walgreens.

21.     Based on information and belief, a police officer was positioned at the intersection of Sunset Strip and Sunrise Boulevard, approximately 200 yards south of Miller's location, and another police officer was positioned at the intersection of Sunset Strip and Del Lago Circle, about 75-100 yards south of Miller's location.

22.     At all times material hereto, Defendant CITY OF PLANTATION police officer Christopher E. Powell (hereinafter "Powell") took a perimeter position at the intersection of Northwest 12th Street and Sunset Strip, adjacent to a Stop & Save convenience store located approximately 75 yards north of Miller's location (at the intersection of Northwest 11th Street and Sunset Strip).  Powell positioned his police car to block motor vehicle traffic from turning west onto Northwest 12th Street from Sunset Strip.

4

23.     At the request of Wendt, Miller subsequently moved westward on Northwest 11th Street.  Defendant LOPEZ then took Miller's perimeter position at the intersection of Northwest 11th Street and Sunset Strip.

24.     At all times material hereto, Wendt and City of Sunrise police officer David Tuttle were positioned in the 6300 block of Northwest 11th Street, thereby forming the north boundary of the police perimeter.

25.     Perimeter positions on Northwest 11th Street (under the control of Miller and Defendant LOPEZ) formed the south side of the police perimeter.

26.     At all times material hereto, Powell (located adjacent to the Stop & Save convenience store at Sunset Strip and Northwest 12th Street) and Defendant LOPEZ (located at Sunset Strip and Northwest 11th Court) formed the east side of the police perimeter.

27.     At all times material hereto, an access road at the 6300 block of W. Sunrise Boulevard formed the west side of the perimeter.

28.     At all times material hereto, the suspects were described in police radio transmissions (BOLO) as two black males in their late teens or twenties, with short hair.   Suspect # 1 was last seen wearing a blue shirt and blue jeans.  Suspect # 2 was last seen wearing a white shirt and a hat.

29.     At all times material hereto, Defendant LOPEZ had been a police officer for approximately 20 months.

30.     At all times material hereto, it was dark in the area where Defendant LOPEZ was positioned, and Defendant LOPEZ was wearing a dark midnight blue Defendant CITY OF PLANTATION police uniform (shirt and pants).  In addition, Defendant LOPEZ wore a dark

5

midnight blue long-sleeve undershirt and dark midnight blue baseball cap, leaving only his hands, face, and neck not concealed by dark midnight blue clothing.

31.     At all times material hereto, Plaintiff was age 59 and lived at 5940 N.W. 12th Court, Sunrise, Broward County, Florida, for the prior 13 years.

32.     At all times material hereto, Plaintiff's residence was located on Northwest 12th Court, a distance of approximately 200 yards east of Sunset Strip.

33.     At all times material hereto, the intersection of Sunset Strip and Northwest 12th Court was approximately 75 yards north of the intersection of Northwest 12th Street, where Powell was blocking motor vehicle traffic from turning westbound onto Northwest 12th Street from Sunset Strip.

34.     At all times material hereto, Plaintiff was employed as a certified nursing assistant at The Kidz Korner at Plantation Nursing & Rehabilitation Center, located at 4250 Northwest 5th Street, Plantation, Broward County, Florida.

35.     At all times material hereto, Plaintiff worked the 23:00 - 07:00 hrs. shift.

36.     At approximately 22:29 hrs., Plaintiff left for her residence in an autumn orange-in-color Ford Expedition, to travel to work.

37.     Plaintiff followed her customary route of travel westbound on 12th Court to Sunset Strip, then south to Sunrise Boulevard.

38.     As Plaintiff turned south onto Sunset Strip, she observed "police lights . . . flashing all over the place."

39.     Based on information and belief, the police lights observed by Plaintiff included Powell's police car, which was positioned in a manner that prevented motor vehicles

traveling southbound on Sunset Strip (towards Sunrise Boulevard) from turning westbound on Northwest 12th Street, but permitted southbound vehicles on Sunset Strip to continue traveling southbound towards Sunrise Boulevard.

   40. Slowly, Plaintiff continued southbound on Sunset Strip at a reduced rate of speed (i.e., 15-20 miles per hour).

   41. As Plaintiff continued southbound, she observed Defendant LOPEZ behind the engine block of his parked police car, at the intersection of southbound Sunset Strip and Northwest 11th Street.

   42. Defendant LOPEZ positioned his police car in a manner that blocked the left through lane of southbound Sunset Strip (i.e., the lane closet the median between north and southbound traffic on Sunset Strip).

   43. Only the front left of Defendant LOPEZ's marked police vehicle extended into any portion of the right through lane of southbound Sunset Strip, and there existed ample room for vehicles southbound on Sunset Strip to turn west onto Northwest 11th Street (towards the perimeter position occupied by Miller) or continue southbound on Sunset Strip. (See Exhibit "A," photograph, which has been contemporaneously filed by notice of conventional filing).

   44. At all times material hereto, Defendant LOPEZ's vehicle was positioned near the middle of the approximately 115 foot long median break at the intersection of Northwest 11th Street and Sunset Strip, thereby providing sufficient room for vehicles traveling southbound on Sunset Strip to turn right onto Northwest 11th Street or make a u-turn onto northbound Sunset Strip either before or after passing Defendant LOPEZ's parked police car. (See Exhibit "B," aerial photograph with position of tires marked on roadway, which has been contemporaneously filed by

notice of conventional filing).

45.     As Plaintiff traveled southbound, she slowly moved over to the right side of the right though lane to maintain a safe distance between her motor vehicle and the area where Defendant LOPEZ was standing, and continued southbound on Sunset Strip at a reduced rate of speed.

46.     As Plaintiff passed Defendant LOPEZ's motor vehicle and began slowly turning back in a southeasterly direction towards the center of the right through lane, Defendant LOPEZ opened fire on Plaintiff with his Glock 9 mm firearm, from a position behind and to the left of the driver's seat occupied by Plaintiff.

47.     Defendant LOPEZ intentionally discharged one round which entered the driver's side window of Plaintiff's Ford Explorer, causing flying glass to strike Plaintiff in the area of her left forearm (resulting in non life-threatening injuries).   (See Exhibit "C," photograph depicting the driver's side window of Plaintiffs' motor vehicle and the evidence cone showing the location where the spent shell casing was recovered, which has been contemporaneously filed by notice of conventional filing).

48.     After passing through the driver's side window, the round entered the dashboard of Plaintiff's Ford Explorer just left of the vehicle's speedometer, and came to rest inside the dashboard compartment of the motor vehicle.

49.     Plaintiff stopped her motor vehicle almost immediately, a distance of less than 10 yards south of the front left of Defendant LOPEZ's parked police car.

50.     Other officers ran on foot to the scene of the shooting and Plaintiff was removed from her motor vehicle, and handcuffed.

51.     On February 19, 2010, eleven (11) days after the shooting and accompanied by his attorney, Defendant LOPEZ provided a sworn statement wherein he described the aftermath of the shooting:

Yeah.  Right after I shot, um, or right after she was pulled from the vehicle- - I'm sorry - - and on the floor and handcuffed, I - - I basically ran over to her and started to try, you know, first responder and see where she was hit.  She was hysterical.   Um, you know, I had my hand on - - on her shoulder just trying to comfort her to ask her, you know, "Where - - where are you hit? Where are you hit?"  Um, she just kept on - - on screaming.  I - - I can't even remember what she was screaming, but it wasn't anything on where she was hit.  The only thing I could see was on her, um - - on her arm, was just on her left arm, almost like scratches and just, uh, like, minimal - - just some bleeding, nothing - - I didn't - - I knew she wasn't shot there.

That's why I was trying to figure out - - I was trying to check her to see if any holes in her shirt or anything like that, but I couldn't find it.  Right after, uh, the vehicle was cleared, uh, we - - somebody behind me told, uh Officer Pall [sic] to, uh - - to take the handcuffs off of her so we could, you know, help attend to her a little more.  And somebody had also called over the radio for Rescue, so I was just trying to, you know, comfort her and, you know, help her out to see where - - to do first responder to see if, uh - - you know, where she was hit to - - .

52.     Prior to the shooting, Defendant LOPEZ was carrying a flashlight in his right hand and a firearm in his left hand.

9

53.     In his sworn statement, Defendant LOPEZ stated that he did not believe Plaintiff was trying to intentionally hit him with her motor vehicle.   Defendant LOPEZ explained: "After, uh, knowing all the facts around everything, I don't think she was intending to run me over, but at the time of the incident, you know, with - - with everything that was going on, in my head these were the people trying to get outta the perimeter and they were gonna do whatever they could to do to, uh, get out - -."

54.     No charges (civil or criminal) were ever filed against Plaintiff.

55.     Defendant LOPEZ explained that while positioned at the intersection of Northwest 11th Street and Sunset Strip, he stopped all motor vehicles traveling southbound on Sunset Strip in order to determine whether the individuals suspected in the strong armed robbery were inside the vehicle:

Q:     Okay.  Sou you take up the position, uh, at 11th and Sunset Strip, um, and you're blocking traffic?

A:     Yes, I'm blocking southbound traffic.

Q:     All right.  You mentioned something about the crime scene.

A:     I'm blocking traffic just because if K-9 has to come and, uh, go across Sunset Strip or track on the roadway, I didn't want cars to effect, uh, - - to strike the K-9 officers or any other officers that were actually on the ground at the time.

Q:     Okay.  Um, when you were on a perimeter point and if you have a car that comes through a perimeter point, um, within the perimeter, I should say, would there be - - uh, would - - in your training, would there ever been a reason why you would stop the car?

10

A:     I always stop the car to make sure, uh, that the suspects aren't in there. Um, it's just a brief, uh, stop, nothing, uh - - nothing too serious, just to make sure they're in the car.  I explain the situation to the person that's coming in or out.  Um, nobody actually goes into the perimeter.

Q:     Okay.

A:     But just to alleviate, uh, the - - how many people are actually in the perimeter that don't need to be there, I'll let them go out as long as the car checks out that none of the suspects are in there, and that had happened several times while I was at the perimeter point of vehicles coming eastbound on 11th towards Sunset Strip.

Q:     Okay.  And just to cover that, that's not something that you came up with.  That's something that - - that you're taught in your training?

A:     Yeah, I was taught in any training, yes.

56.     In the minutes prior to the shooting, Defendant LOEPZ positioned himself on the driver's side of his police car, behind the engine block.   From that location, over a period of approximately 30 minutes, Defendant LOPEZ estimates that he stopped 50-100 vehicles.

57.     Although Defendant LOPEZ had a strobe feature on his flashlight which he used to try and attract the attention of drivers traveling southbound on Sunset Strip, Defendant LOPEZ was standing within feet of the flashing array of lights produced by the fully activated emergency lightbar atop Defendant LOPEZ's marked police vehicle.

58.     In his sworn statement, Defendant LOPEZ stated that he pointed the strobe light in the direction of the passenger compartment of Plaintiff's motor vehicle, but was unable to identify who was inside the vehicle as it continued southbound on Sunset Strip.

11

59.     When Plaintiff's motor vehicle failed to stop, Defendant LOPEZ alleges that he moved directly southbound away from the engine block of his motor vehicle– no closer and no further to the right through lane, at which time Defendant LOPEZ alleges that (unbeknownst to Plaintiff) he yelled: 'Stop stop stop."

60.     Based on information and belief, as Plaintiff's motor vehicle moved past Defendant LOPEZ's location, Defendant LOPEZ moved west from the left through lane into the right through lane, thereby placing himself within feet of Plaintiff's passing motor vehicle.

61.     Based on information and belief, Defendant LOPEZ attempted to strike Plaintiff's motor vehicle with his flashlight, and in fact may have made contact with the driver's side mirror of Plaintiff's motor vehicle.

62.     When Plaintiff's motor vehicle failed to stop and continued southbound, Defendant LOPEZ discharged his firearm, causing Plaintiff to immediately stop.

63.     At the time Plaintiff's motor vehicle came to rest, the rear of Plaintiff's motor vehicle was less than 10 yards (i.e., 30 feet) past the front driver's side of Defendant LOPEZ's parked police car.

64.     When Plaintiff's motor vehicle came to rest, the motor vehicle was pointed in a slightly southeasterly direction as it was returning to the middle of the right through lane of Sunset Strip, southbound. (See Exhibit "D," photograph, which has been contemporaneously filed by notice of conventional filing).

65.     At all times material hereto, there was no lawful basis for Defendant LOPEZ to stop all motor vehicles traveling southbound on Sunset Strip at Northwest 11th Street.

66.     At all times material hereto, Defendant LOPEZ lacked the individualized

suspicion necessary to stop Plaintiff's motor vehicle.

67.     At all times material hereto, there was no indication from any source that the strong-armed robbery suspects successfully fled from the police perimeter.

68.     At all times material hereto, had the suspects successfully fled from the police perimeter without being detected by the phalanx of police officers and police K-9's involved in the search for the suspects, it was not likely they would have fled southbound on Sunset Strip.

69.     At all times material hereto, fleeing southbound on Sunset Strip would have returned the suspects to the area from which they had just escaped, and numerous police vehicles (with their emergency lightbars fully activated) were positioned in plain view on Sunset Strip, and inside and around the entire police perimeter.

70.     At approximately 22:43 hrs. (i.e., subsequent to Defendant LOPEZ discharging his firearm), juvenile suspect H.M was observed by Wendt attempting to flee north across Northwest 11th Street, where he was apprehended with the assistance of a City of Sunrise police officer.

71.     At approximately 00:21 hrs., juvenile suspect N.L. was apprehended by Wendt and City of Sunrise K-9 officer Aaron Vandenhouten, after Vandenhouten's K-9 alerted to the roof of a daycare center located at 6196 Northwest 11th Street, Sunrise, Florida.

72.     Both H.M. and N.L. were charged with the strong-armed robbery at the Walgreens store.

73.     Subsequently, several police officers employed by Defendant CITY OF PLANTATION conducted a so-called internal use of force review board, which determined in part that "Officer Lopez could have placed his vehicle in a more strategic location" and "Officer Lopez

might have been able to move to a safer area" (instead of moving directly south as Plaintiff's vehicle traveled southbound on Sunset Strip in the moments prior to the shooting). Defendant LOPEZ was also cited for his lack of marksmanship, insofar as Defendant LOPEZ failed to hit Plaintiff with the round discharged from his firearm.

74. The conduct of Defendant LOPEZ occurred under color of state law.

## CAUSES OF ACTION

### COUNT I
### FOURTH AMENDMENT CLAIM AGAINST DEFENDANT LOPEZ, INDIVIDUALLY, COGNIZABLE UNDER 42 U.S.C. § 1983
**(Stop of motor vehicle)**

For her cause of action against Defendant LOPEZ, individually, in Count I, Plaintiff states:

75. Plaintiff realleges and adopts, as if fully set forth in Count I, the allegations of paragraphs 1 through 74.

76. Defendant LOPEZ proximately caused the stop of Plaintiff's motor vehicle in the absence of reasonable suspicion that Plaintiff was wanted in connection with the strong armed robbery at the Walgreens store.

77. At all times material hereto, as Defendant LOPEZ knew, if the suspects successfully fled from the police perimeter without being detected by the phalanx of police officers and police K-9's involved in the search, it was not likely they would have fled southbound on Sunset Strip given the numerous avenues of escape in directions away from the police perimeter.

78. At all times material hereto, Defendant LOPEZ positioned his police car in a manner that failed to block motor vehicle traffic in the right hand through lane from continuing southbound Sunset Stip or west on Northwest 11th Street, and in so doing, failed to reasonably signal

14

Plaintiff that she was required to stop.

79.    The conduct of Defendant LOPEZ towards Plaintiff was objectively unreasonable and violation of Plaintiff's clearly established rights under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983.

80.    As a direct and proximate result of the acts described above, in violation of 42 U.S.C. § 1983, Plaintiff has suffered grievously, has been brought into public scandal, and with great humiliation, mental suffering, and damaged reputation, including business reputation/goodwill.

81.    As a further direct and proximate result of the conduct of Defendant LOPEZ, Plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical care and treatment, loss of earnings, and loss of ability to earn money.  The losses are either permanent or continuing and Plaintiff will suffer the losses in the future, in violation of Plaintiff's clearly established civil rights.  Plaintiff has also agreed to pay the undersigned a reasonable fee for his services herein.

WHEREFORE, Plaintiff prays:

a.    Judgment for compensatory damages in excess of $ 15,000 dollars;

b.    Judgment for exemplary damages;

c.    Cost of suit;

d.    Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

e.    Trial by jury as to all issues so triable; and

f.    Such other relief as this Honorable Court may deem just and appropriate.

## COUNT II
## FOURTH AMENDMENT CLAIM AGAINST DEFENDANT LOPEZ,
## INDIVIDUALLY, COGNIZABLE UNDER 42 U.S.C. § 1983
### (Excessive force)

For her cause of action against Defendant LOPEZ, individually, in Count II, Plaintiff states:

82.     Plaintiff realleges and adopts, as if fully set forth in Count II, the allegations of paragraphs 1 through 74.

83.     Defendant LOPEZ proximately caused the stop of Plaintiff's motor vehicle with deadly force, in the absence of lawful authority.

84.     The deadly force used by Defendant LOPEZ to stop Plaintiff was unreasonable and unnecessary under the circumstances.   Defendant LOPEZ lacked reasonable suspicion that either of the strong-armed robbery suspects were driving Plaintiff's motor vehicle or that the driver of Plaintiff's motor vehicle posed an imminent threat of serious physical harm to any other person.

85.     At all times material hereto, any reasonable police officer in the position of Defendant LOPEZ would have known that Plaintiff's motor vehicle was not intentionally used as a deadly weapon, and that the use of deadly force without warning was unreasonable and unnecessary under the circumstances.   To the contrary, Defendant LOPEZ positioned his police car in a manner that failed to block motor vehicle traffic in the right hand through lane from continuing southbound Sunset Stip or west on Northwest 11th Street, and in so doing, failed to reasonably signal Plaintiff to stop.   When Plaintiff's motor vehicle failed to stop, Defendant LOPEZ moved towards Plaintiff's motor vehicle and struck Plaintiff's motor vehicle with his flashlight, in the absence of lawful authority, and opened fire.   Any exigency necessitating the use of deadly force was caused

by the unlawful conduct of Defendant LOPEZ, not Plaintiff.

86.     At all times material hereto, it was clearly established law that "[i]t is not better that all felony suspects die than that they escape.  Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so."  Tennessee v. Garner, 105 S.Ct. 1694, 1701 (1985).

87.     The conduct of Defendant LOPEZ towards Plaintiff was objectively unreasonable and violation of Plaintiff's clearly established rights under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983.

88.     As a direct and proximate result of the acts described above, in violation of 42 U.S.C. § 1983, Plaintiff has suffered grievously, has been brought into public scandal, and with great humiliation, mental suffering, and damaged reputation, including business reputation/goodwill.

89.     As a further direct and proximate result of the conduct of Defendant LOPEZ, Plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical care and treatment, loss of earnings, and loss of ability to earn money.  The losses are either permanent or continuing and Plaintiff will suffer the losses in the future, in violation of Plaintiff's clearly established civil rights.  Plaintiff has also agreed to pay the undersigned a reasonable fee for his services herein.

90.     As a direct and proximate result of the acts described above, in violation of 42 U.S.C. § 1983, Plaintiff has suffered grievously, has been brought into public scandal, and with great humiliation, mental suffering, and damaged reputation, including business reputation/goodwill.

91.     As a further direct and proximate result of the conduct of Defendant LOPEZ,

Plaintiff suffered loss of her liberty and freedom, bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical care and treatment, loss of earnings, and loss of ability to earn money.  The losses are either permanent or continuing and Plaintiff will suffer the losses in the future, in violation of Plaintiff's clearly established civil rights.  Plaintiff has also agreed to pay the undersigned a reasonable fee for his services herein.

WHEREFORE, Plaintiff prays:

      a.      Judgment for compensatory damages in excess of $ 15,000 dollars;

      b.      Judgment for exemplary damages;

      c.      Cost of suit;

      d.      Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

      e.      Trial by jury as to all issues so triable; and

      f.      Such other relief as this Honorable Court may deem just and appropriate.

### COUNT III
### CUSTOM, POLICY AND PRACTICE CLAIM
### AGAINST DEFENDANT CITY OF PLANTATION,
### COGNIZABLE UNDER 42 U.S.C. § 1983

For her cause of action against Defendant CITY OF PLANTATION in Count III, Plaintiff states:

92.     Plaintiff realleges and adopts, as if fully set forth in Count III, the allegations of paragraphs 1 through 74

93.     At all times relevant to herein, Defendant LOPEZ, as a police officer for the CITY OF PLANTATION, was acting under the direction and control of the   CITY OF

PLANTATION, which acted through its agents and employees who were responsible for making policies of the CITY OF PLANTATION, its officers, and operations, and as such, Defendant LOPEZ was acting pursuant to either official policy or the practice, custom, and usage of the CITY OF PLANTATION, or as a result of the lack of official policy.

94.     Acting under color of law, by and through the policymakers of the CITY OF PLANTATION, and pursuant to either official policy or the practice, custom, and usage of the CITY OF PLANTATION, or the lack of official policy, the CITY OF PLANTATION intentionally, knowingly, recklessly, or with deliberate indifference to the constitutionally protected rights of others, failed to instruct, supervise, control and/or discipline, on a continuing basis, Defendant LOPEZ, and others, to refrain from establishing unconstitutional police checkpoints at crime scene perimeters; refrain from establishing police checkpoints at crime scene perimeters without supervisory approval; establishing checkpoints at  locations or in a manner that fails to provide unambiguous notice to the traveling public that they are required to stop; and, the constitutional limitations on the use of deadly force, i.e., the use of deadly force against motor vehicles that fail to stop at a police checkpoint without confirming that the target of the deadly force is also the target of the police checkpoint, and that the use of deadly force is justified under the circumstances, in violation of the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

95.     The CITY OF PLANTATION had knowledge of or, had it diligently exercised his duties to instruct, supervise, control, and discipline on a continuing basis, should have had knowledge of the wrongs that were done, as heretofore alleged, or other unlawful or unconstitutional acts that were going to be committed.  The CITY OF PLANTATION had power to prevent or aid

19

in preventing the commission of said wrongs, could have done so, and intentionally, knowingly, or with deliberate indifference to the constitutionally protected rights of others, failed or refused to do so.

96.     Defendant CITY OF PLANTATION directly or indirectly, under color of law, approved or ratified the unlawful and deliberately indifferent conduct of Defendant LOPEZ, and others, heretofore described.

97.     The official policy, or the lack of necessary policies, and/or the practice, custom, and usage of Defendant CITY OF PLANTATION, as set forth herein, caused the deprivation of Plaintiff's constitutionally protected rights contrary to the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983.

98.     As a direct and proximate result of the acts described above, in violation of 42 U.S.C. § 1983, Plaintiff has suffered grievously, has been brought into public scandal, and with great humiliation, mental suffering, and damaged reputation, including business reputation/goodwill.

99.     As a further direct and proximate result of the conduct of Defendant CITY OF PLANTATION, Plaintiff suffered loss of her liberty and freedom, bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical care and treatment, loss of earnings, and loss of ability to earn money.  The losses are either permanent or continuing and Plaintiff will suffer the losses in the future, in violation of Plaintiff's clearly established civil rights.  Plaintiff has also agreed to pay the undersigned a reasonable fee for his services herein.

WHEREFORE, Plaintiff prays:

a.     Judgment for compensatory damages in excess of $ 15,000 dollars;

20

b.      Cost of suit;

c.      Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

d.      Trial by jury as to all issues so triable; and

e.      Such other relief as this Honorable Court may deem just and appropriate.

## COUNT IV
## FALSE ARREST CLAIM AGAINST DEFENDANT CITY OF PLANTATION

For her cause of action against Defendant CITY OF PLANTATION in Count IV, Plaintiff states:

100.    Plaintiff realleges and adopts, as if fully set forth in Count IV, the allegations of paragraphs 1 through 74.

101.    Defendant LOPEZ proximately caused the stop and temporary detention of Plaintiff in the absence of reasonable suspicion that Plaintiff was wanted in connection with the strong armed robbery at the Walgreens store, or committed any traffic offense.

102.    At all times material hereto, as Defendant LOPEZ knew, if the suspects successfully fled from the police perimeter without being detected by the phalanx of police officers and police K-9's involved in the search, it was not likely they would have fled southbound on Sunset Strip given the numerous avenues of escape in directions away from the police perimeter.

103.    At all times material hereto, Defendant LOPEZ positioned his police car in a manner that failed to block motor vehicle traffic in the right hand through lane from continuing southbound Sunset Stip or west on Northwest 11th Street, and in so doing, failed to reasonably signal Plaintiff that she was required to stop.

104.    The actions of Defendant LOPEZ, in causing the stop and temporary detention

21

of Plaintiff in the absence of reasonable suspicion, were taken in absence of lawful authority. The actions of Defendant LOPEZ constitute false arrest/false imprisonment of Plaintiff under Florida law.

105.    The false arrest/false imprisonment of Plaintiff by Defendant LOPEZ was committed by Defendant LOPEZ in the course and scope of his employment as a police officer for Defendant CITY OF PLANTATION.

106.    As a direct and proximate result of the acts described above, Plaintiff has suffered grievously, has been brought into public scandal, and with great humiliation, mental suffering, and damaged reputation, including business reputation/goodwill.

107.    As a further direct and proximate result of the conduct of Defendant CITY OF PLANTATION, Plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical care and treatment, loss of earnings, and loss of ability to earn money. The losses are either permanent or continuing and Plaintiff will suffer the losses in the future, in violation of Plaintiff's rights. Plaintiff has also agreed to pay the undersigned a reasonable fee for his services herein.

WHEREFORE, Plaintiff prays:

a.    Judgment for compensatory damages in excess of $ 15,000 dollars;

b.    Cost of suit;

c.    Trial by jury as to all issues so triable; and

d.    Such other relief as this Honorable Court may deem just and appropriate.

## COUNT V
## FALSE ARREST CLAIM AGAINST DEFENDANT LOPEZ, INDIVIDUALLY

For her cause of action against Defendant LOPEZ, individually, in Count V, Plaintiff states:

108.     Plaintiff realleges and adopts, as if fully set forth in Count V, the allegations of paragraphs 1 through 74.

109.     Defendant LOPEZ proximately caused the stop and temporary detention of Plaintiff in the absence of reasonable suspicion that Plaintiff was wanted in connection with the strong armed robbery at the Walgreens store, or committed any traffic offense.

110.     At all times material hereto, as Defendant LOPEZ knew, if the suspects successfully fled from the police perimeter without being detected by the phalanx of police officers and police K-9's involved in the search, it was not likely they would have fled southbound on Sunset Strip given the numerous avenues of escape in directions away from the police perimeter.

111.     At all times material hereto, Defendant LOPEZ positioned his police car in a manner that failed to block motor vehicle traffic in the right hand through lane from continuing southbound Sunset Stip or west on Northwest 11th Street, and in so doing, failed to reasonably signal Plaintiff that she was required to stop.

112.     The actions of Defendant LOPEZ, in causing the stop and temporary detention of Plaintiff in the absence of reasonable suspicion, were taken in absence of lawful authority.  The actions of Defendant LOPEZ constitute false arrest/false imprisonment of Plaintiff under Florida law.

113.     Alternatively to the allegations set forth in Count IV, if the conduct of Defendant LOPEZ towards Plaintiff occurred outside the course and scope of his employment for

Defendant CITY of PLANTATION, or was committed by Defendant LOPEZ in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property, the conduct of Defendant LOPEZ was committed in his individual capacity.

114.    As a direct and proximate result of the acts described above, Plaintiff has suffered grievously, has been brought into public scandal, and with great humiliation, mental suffering, and damaged reputation, including business reputation/goodwill.

115.    As a further direct and proximate result of the conduct of Defendant LOPEZ, Plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical care and treatment, loss of earnings, and loss of ability to earn money.  The losses are either permanent or continuing and Plaintiff will suffer the losses in the future, in violation of Plaintiff's rights.

WHEREFORE, Plaintiff prays:

a.    Judgment for compensatory damages in excess of $ 15,000 dollars;

b.    Judgment for exemplary damages;

c.    Cost of suit;

d.    Trial by jury as to all issues so triable; and

e.    Such other relief as this Honorable Court may deem just and appropriate.

### COUNT VI
### BATTERY/UNNECESSARY FORCE CLAIM AGAINST DEFENDANT
### CITY OF PLANTATION

For her cause of action against Defendant CITY OF PLANTATION, in Count VI, Plaintiff states:

116.    Plaintiff realleges and adopts, as if fully set forth in Count VI, the allegations

of paragraphs 1 through 74.

117.    At the time of Defendant LOPEZ's use of deadly force, Defendant LOPEZ lacked reasonable suspicion that either of the strong-armed robbery suspects were driving Plaintiff's motor vehicle or that the driver of Plaintiff's motor vehicle posed an imminent threat of serious physical harm to any other person.

118.    The deadly force used by Defendant LOPEZ to stop Plaintiff was unreasonable and unnecessary under the circumstances and resulted, as Defendant LOPEZ reasonably should have foreseen, in a harmful and offensive contact of Plaintiff, against her will.

119.    The battery/unnecessary use of force against Plaintiff by Defendant LOPEZ occurred during the course and scope of his employment as a police officer for Defendant CITY OF PLANTATION.

120.    As a direct and proximate result of the acts described above, Plaintiff has suffered grievously, has been brought into public scandal, and with great humiliation, mental suffering, and damaged reputation, including business reputation/goodwill.

121.    As a further direct and proximate result of the conduct of Defendant CITY OF PLANTATION, Plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical care and treatment, loss of earnings, and loss of ability to earn money. The losses are either permanent or continuing and Plaintiff will suffer the losses in the future, in violation of Plaintiff's rights.

WHEREFORE, Plaintiff prays:

a.    Judgment for compensatory damages in excess of $ 15,000 dollars;

b.      Cost of suit;

c.      Trial by jury as to all issues so triable; and

d.      Such other relief as this Honorable Court may deem just and
appropriate.

### COUNT VII
### BATTERY/UNNECESSARY FORCE CLAIM AGAINST
### DEFENDANT LOPEZ, INDIVIDUALLY

For her cause of action against Defendant LOPEZ, individually, in Count VII, Plaintiff states:

122.    Plaintiff realleges and adopts, as if fully set forth in Count VII, the allegations
of paragraphs 1 through 74.

123.    At the time of Defendant LOPEZ's use of deadly force, Defendant LOPEZ
lacked reasonable suspicion that either of the strong-armed robbery suspects were driving Plaintiff's
motor vehicle or that the driver of Plaintiff's motor vehicle posed an imminent threat of serious
physical harm to any other person.

124.    The deadly force used by Defendant LOPEZ to stop Plaintiff was
unreasonable and unnecessary under the circumstances and resulted, as Defendant LOPEZ
reasonably should have foreseen, in a harmful and offensive contact of Plaintiff, against her will.

125.    Alternatively to the allegations set forth in Count VI, if the conduct of
Defendant LOPEZ towards Plaintiff occurred outside the course and scope of his employment for
Defendant CITY of PLANTATION, or was committed by Defendant LOPEZ in bad faith or with
malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety,
or property, the conduct of Defendant LOPEZ was committed in his individual capacity.

126.    As a direct and proximate result of the acts described above, Plaintiff has

suffered grievously, has been brought into public scandal, and with great humiliation, mental suffering, and damaged reputation, including business reputation/goodwill.

127.    As a further direct and proximate result of the conduct of Defendant LOPEZ, Plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical care and treatment, loss of earnings, and loss of ability to earn money.  The losses are either permanent or continuing and Plaintiff will suffer the losses in the future, in violation of Plaintiff's rights.

WHEREFORE, Plaintiff prays:

a.    Judgment for compensatory damages in excess of $ 15,000 dollars;

b.    Judgment for exemplary damages;

c.    Cost of suit;

d.    Trial by jury as to all issues so triable; and

e.    Such other relief as this Honorable Court may deem just and appropriate.

## DEMAND FOR JURY TRIAL

128.    Plaintiff demands trial by jury on all issues so triable as of right.

**DATED** this   20th   day of December, 2011.

27

By:   *s/. Hugh L. Koerner*
Hugh L. Koerner
Florida Bar No.: 716952
Email: hlklaw@hughkoerner.com
Hugh L. Koerner, P.A.
Sheridan Executive Centre
3475 Sheridan Street, Suite 208
Hollywood, FL 33021
Telephone: (954) 522-1235
Facsimile:  (954) 522-1176
**Attorneys for Plaintiff Barbara Henry**